UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TROY OLRICH,

    Petitioner,

v.

LORI GIDLEY, *Warden*,

    Respondent.

Case No. 16-cv-11603
Honorable Laurie J. Michelson

**OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS [1]**

In 2013, Troy Olrich was sentenced to five years' probation, which included spending a year in a local Michigan prison. While Olrich was still in prison, an on-again-off-again friend asked Olrich to stop contacting her. Yet Olrich called her 60 times. A state trial judge found that this conduct violated a Michigan stalking statute which, in turn, violated a condition of Olrich's probation. Thus, Olrich was resentenced to at least three and at most seven-and-a-half years in prison.

Olrich now seeks a writ of habeas corpus from this federal court. His only claim is that insufficient evidence supports the state trial court's finding that he violated the stalking statute (which is the sole basis for his probation violation). As will be explained, the only time Olrich presented this claim to the state courts was in a motion for peremptory reversal filed in the Michigan Supreme Court. The state high court denied the motion but did not say if that was because the motion was procedurally improper or because it lacked merit. The former possibility leads to a procedural-default analysis, the latter a merits one. As it turns out, both analyses lead to the same place: the denial of Olrich's petition.

# I.

## A.

On June 13, 2013, Olrich was "placed on five years' probation" for aggravated stalking and third-degree home invasion. (R. 7, PID 119–20.) As part of this sentence, he received 60 days in prison on the stalking charge and 10 months in prison on the home invasion charge. As a further condition of his probation, Olrich was not to violate any Michigan law. (R. 7, PID 179–80.)

In September 2013, Olrich, while still in prison, was arraigned on two counts of violating his probation. In the count that is relevant here, Olrich was accused of violating a stalking statute, Michigan Compiled Laws § 750.411h to be precise, by repeatedly contacting Katherine McMahan from prison. (*See* R. 7, PID 131, 175.) Section 750.411h prohibits "a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel [that way]."

Some of the evidence introduced at the probation-violation hearing indicated that Olrich had violated § 750.411h. In particular, McMahan testified that while she had visited Olrich in jail from the end of 2012 through April 2013 (R. 7, PID 204–05), sometime around April 2013, she sent Olrich a postcard stating that he did not need to contact her anymore (R. 7, PID 205–06, 212). McMahan also verbally told Olrich not to contact her anymore, although the precise timing of that communication is unclear. (R. 7, PID 206.) But Olrich persisted: after being placed on probation on June 13, 2013, he called McMahan 60 times. (R. 7, PID 189.) McMahan recalled being "very aggravated that he continued to call." (R. 7, PID 207.) And in August 2013, McMahan received two postcards from Olrich; one said, "love you bunches," the other, "together

forever." (R. 7, PID 220.) Shortly thereafter, McMahan obtained a personal-protection order. (R. 7, PID 200.) She testified, "I have a son at home and it was very, very upsetting to him and I was—I was trying to prevent when Troy was released a personal face to face confrontation. Most of all I was—I had made it clear that I was finished with any type of friendship and he continued to attempt to contact me." (R. 7, PID 202.)

Other evidence introduced at Olrich's probation-violation hearing cut the other way. In particular, McMahan testified that there were prior occasions in their six-year friendship where she had asked Olrich not to contact her anymore but, after Olrich persisted, the friendship would resume. (R. 7, PID 211.) McMahan also admitted that she ordered Olrich items from the prison commissary even after she had told him to stop contacting her. (R. 7, PID 212–13.) (Apparently, McMahan had taken on this responsibility because Olrich's wife had a disability that made it hard for her to use the internet. (R. 7, PID 217–18.)) Further, the evidence suggested that there were only two times when McMahan and Olrich talked on the phone after she asked him to stop contacting her—and both were before he was placed on probation. (R. 7, PID 214.) McMahan also testified that she never would have sought the protective order had she known that it would expose Olrich to further punishment. (R. 7, PID 219.)

In the end, the state trial judge found that, more likely than not, Olrich had violated § 750.411h. The judge explained in part, "Now the defendant was told in April [2013] by Ms. McMahan not to contact her and he continued. I mean the telephone log is really quite ridiculous when you look at the number of contacts that he attempted to make, they're obsessive. . . . [T]he cards, in early August[,] bolster the concern that Ms. McMahan would have. In fact she went out and got a PPO, she was concerned." (R. 7, PID 238.)

3

In October 2013, Olrich was sentenced for his probation violation. The state trial judge gave Olrich a minimum of three and a maximum of seven-and-half years in prison for each underlying conviction, with the two sentences to run concurrent. (R. 7, PID 308–09.)

**B.**

In November 2014, Olrich filed a delayed application for leave to appeal with the Michigan Court of Appeals. In that application, Olrich did not challenge his probation violation. The Michigan Court of Appeals denied Olrich's delayed application. (R. 7, PID 366.)

Olrich then sought relief from the Michigan Supreme Court. In his application for leave to appeal, Olrich again did not challenge his probation violation. But via a motion for peremptory reversal, Olrich requested that the Michigan Supreme Court "peremptorily reverse his probation violation conviction due to insufficient evidence." (R. 7, PID 1009.)

The Michigan Supreme Court did not grant Olrich the relief he requested. Regarding Olrich's application for leave to appeal, the Michigan Supreme Court denied leave without prejudice to Olrich filing a motion for relief from judgment in the state trial court. *See People v. Olrich*, 869 N.W.2d 617 (Mich. 2015). As for Olrich's motion for peremptory reversal, i.e., the one challenging his probation violation, the Michigan Supreme Court said only this: "The motion for peremptory reversal . . . [is] DENIED." *Id.*

Olrich later filed a motion for new trial in the state trial court—but that motion also did not assert that evidence was not sufficient to establish a probation violation. (*See* R. 7, PID 347–61.) The state trial court, construing the motion as one for relief from judgment, denied it. (R. 7, PID 363–65.)

Olrich then sought leave to appeal arguing (among other things) that the state trial court erred in characterizing his motion for new trial as one for relief from judgment. (R. 7, PID 1166–

67.) Olrich pointed out that by doing so, the court had made it much more difficult for him to file a second motion for relief from judgment. (R. 7, PID 1166–67, 69.) The Michigan Court of Appeals was not convinced: "The Court orders that the delayed application for leave to appeal is DENIED because defendant failed to establish that the trial court erred in denying his motion for relief from judgment." (R. 7, PID 1149.)

## C.

In April 2016, Olrich petitioned this Court for a writ of habeas corpus. (*See* R. 1.) Olrich's only claim is the one he presented in his motion for peremptory reversal: that insufficient evidence supports the state trial court's finding that he stalked McMahan and thereby violated his probation. (*See* R. 1, PID 5, 7.)

## II.

The Warden argues that Olrich's insufficient-evidence claim is not exhausted. (R. 6, PID 36, 56.) Deciding whether the Warden is correct is difficult. And the Warden's conclusory "analysis" does nothing to ease the task. (*See* R. 6, PID 56.)

As a starting point, it seems clear that Olrich did not fairly present his insufficient-evidence claim to the state appellate courts. He did not present it to the Michigan Court of Appeals at all and only presented it to the Michigan Supreme Court in a motion for peremptory reversal. As the normal course would have been for Olrich to have included the claim in his applications for leave to the two state appellate courts, Olrich did not "fair[ly] present[]" his claim to the state courts. *See Castille v. Peoples*, 489 U.S. 346, 351 (1989) (providing that a claim is not exhausted where it has "been presented for the first and only time in a procedural context in which its merits will not be considered unless there are special and important reasons

therefor." (internal quotation marks omitted)). And when a state prisoner does not fairly present his claim to the state courts, the claim is usually not exhausted.

But usually is not always: if the Michigan Supreme Court looked past any procedural impropriety and ruled on the merits of the claim, the claim might well be exhausted. In other words, what would be the point of filing a motion for relief from judgment in a state trial court if the state's highest court had already decided that the claim lacked merit? *See Castille*, 489 U.S. at 350 ("[O]nce the state courts have ruled upon a claim, it is not necessary for a petitioner to ask the state for collateral relief, based upon the same evidence and issues already decided by direct review"); *Nali v. Phillips*, 681 F.3d 837, 852 (6th Cir. 2012).

Unfortunately, the Michigan Supreme Court did not explain why it "DENIED" Olrich's motion for peremptory reversal. Thus, it is unclear whether it assessed the merits of Olrich's insufficient-evidence claim or denied the motion as procedurally improper. And there is support for both positions.

On the one hand, a peremptory order usually involves assessing the merits. Historically, the Michigan Supreme Court issued peremptory rulings to expedite relief in emergencies or "where the proper result was obvious (due to settled law or otherwise)." Gary M. Maveal, *Michigan Peremptory Orders: A Supreme Oddity*, 58 Wayne L. Rev. 417, 442 (2012). And while the Michigan Supreme Court now uses peremptory orders more often and in more circumstances, *see id.* at 444–45, 451, it appears to still be a merits-based decision, *see id.* at 459; *see also id.* at 420 (noting that Michigan is the only state high court in the country that "regularly disposes of requests for a discretionary appeal in non-emergency cases by ruling on the merits"); *but see id.* at 466 (asserting that peremptory order also takes into account the "appeal-worthiness of an

issue"). So the Michigan Supreme Court's general practice provides a good reason to think it decided the merits of Olrich's insufficient-evidence claim.

On the other hand, the unique procedural history leading to Olrich's peremptory motion suggests the opposite. This is not a situation where the Michigan Supreme Court could peremptorily review the Michigan Court of Appeals' adjudication of Olrich's insufficient-evidence claim—the intermediate appellate court did not rule on Olrich's claim because Olrich did not present it to that court. And Olrich did not even present the claim to the Michigan Supreme Court properly. He omitted it from his application for leave to appeal, even though the rules governing practice before the Michigan Supreme Court say, "Unless otherwise ordered by the Court, an appeal shall be limited to the issues raised in the application for leave to appeal." Mich. Ct. R. 7.305. So there is also good reason to think that the Michigan Supreme Court denied the motion for peremptory relief without assessing the merits.

Fortunately, the Court does not have to divine the Michigan Supreme Court's thinking. Whether the Michigan Supreme Court denied Olrich's motion on the merits or as procedurally improper, the end result is that Olrich is not entitled to habeas corpus relief.

**A.**

The Court first explores the path that assumes that the Michigan Supreme Court did not reach the merits of Olrich's insufficient-evidence claim. With that as a starting point, it would mean there was no merits determination by the Michigan Supreme Court that could excuse the improper way that Olrich presented his insufficient-evidence claim to the state courts (i.e., not including it in his application for leave to appeal to the Michigan Court of Appeals or to the Michigan Supreme Court). It would follow that the claim is unexhausted. *See Castille*, 489 U.S. at 351.

7

The next stop on this analytical route is to decide if Olrich can now exhaust the claim. Given that Olrich has already completed his direct appeal, this Court is aware of only one way that he could still exhaust the claim: a motion for relief from judgment. *See Hall v. Rivard*, No. 2:10-CV-11252, 2016 WL 1258990, at *16 (E.D. Mich. Mar. 31, 2016); Mich. Ct. R. 7.205 cmt. to 1989 amendment. But Olrich already filed one of those and, with limited exception, "one and only one motion for relief from judgment may be filed with regard to a conviction." Mich. Ct. R. 6.502(G)(1). The exception: the second motion for relief from judgment is "based on a retroactive change in law that occurred after the first motion for relief from judgment or a claim of new evidence that was not discovered before the first such motion." Mich. Ct. R. 6.502(G)(2). But this does not apply to the well-established law governing an insufficient-evidence claim (*Jackson v. Virginia* or *Douglas v. Buder*) and the evidence is what was presented at the probation-violation hearing. So neither law nor fact arose after Olrich's first motion. Thus, Olrich cannot now exhaust his unexhausted insufficient-evidence claim. In other words, the claim is defaulted. *See Bousley v. United States*, 523 U.S. 614, 622 (1998).[1]

The question becomes whether there is a way around the default. That would occur if Olrich could show "cause for the default and prejudice resulting therefrom, or that failing to review the [insufficient-evidence] claim would result in a fundamental miscarriage of justice." *Williams v. Anderson*, 460 F.3d 789, 805–06 (6th Cir. 2006).

Olrich has not made the required showing. Although very cursorily, the Warden undoubtedly asserted that Olrich's insufficient-evidence claim was procedurally defaulted. (R. 6,

---

[1] To the extent that one might think that Olrich's probation violation is a separate conviction such that a motion for relief from judgment challenging the violation would not be a second motion for purposes of Mich. Ct. R. 6.502(G)(1), Michigan law appears to be to the contrary. *See People v. Kaczmarek*, 628 N.W.2d 484, 487 (Mich. 2001); Mich. Ct. R. 6.445(H) (amended after *Kaczmarek* and making clear that "conviction" in probation-violation statute refers to the "underlying conviction").

PID 36, 56.) Yet Olrich did not file any reply brief to address that assertion. As such, he has not carried his burden of establishing cause and prejudice or a fundamental miscarriage of justice.

Moreover, the Court doubts that Olrich could make that showing. Even if Olrich's appellate counsel was ineffective for not making the insufficient-evidence claim to the Michigan Court of Appeals, that would not explain why Olrich himself did not raise the claim in his motion for relief from judgment instead of trying to present it in a motion for peremptory reversal filed in the Michigan Supreme Court. Thus, there does not seem to be a way for Olrich to establish "cause." As for the fundamental-miscarriage-of-justice exception, Olrich would have to "present new reliable evidence showing that he is actually innocent." *Dufresne v. Palmer*, 876 F.3d 248, 256 (6th Cir. 2017). Olrich has not produced any new evidence and, in any event, the Court cannot say the record is so one sided that not one reasonable judge would have found, by a mere preponderance, that Olrich stalked McMahan. *See Schlup v. Delo*, 513 U.S. 298, 329 (1995).

In sum, under the assumption that the Michigan Supreme Court did not assess the merits of Olrich's insufficient-evidence claim, the claim is not exhausted, it cannot now be exhausted, it is thus defaulted, and that default cannot be excused.

**B.**

Now the other possibility: that the Michigan Supreme Court denied Olrich's motion for peremptory reversal because it lacked merit.

It appears that to deny peremptory relief, the Michigan Supreme Court did not need to assess the merits at much depth—it only had to decide if Olrich obviously did not violate his probation. *See* Maveal, *supra* at 442 (noting that historically, peremptory orders were used only in emergencies or "where the proper result was obvious"). But if the Court is going to find that

9

the state court's merits assessment was enough to exhaust a claim that would otherwise not be exhausted because it was improperly presented then it is also enough to trigger AEDPA deference under 28 U.S.C. § 2254(d). *See Harrington v. Richter*, 562 U.S. 86, 103 (2011) (explaining that § 2254(b)'s exhaustion requirement "complements" § 2254(d)'s deferential review for a decision "on the merits").

So § 2254(d) applies. And that means this Court cannot grant habeas corpus relief on the basis of Olrich's insufficient-evidence claim "unless the [Michigan Supreme Court's] adjudication of [that] claim . . . . resulted in a decision" (1) "that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "that was based on an unreasonable determination of the facts in light of the evidence presented" to the Michigan Supreme Court. *See* 28 U.S.C. § 2254(d). Further, when, as here, the Michigan Supreme Court adjudicates a claim without explanation, this Court is required to consider all the ways that it might have reached its decision. *See Harrington*, 562 U.S. at 101. And if just one of those hypothetical routes to the decision reasonably adheres to the holdings of the United States Supreme Court, the petitioner has not cleared § 2254(d)'s bar to habeas corpus relief. *Id.*

With the standard of review in place, the Court addresses Olrich's claim. Olrich argues that while there might have been sufficient evidence to find that a reasonable victim in McMahan's position would have had the distress required by Michigan Compiled Laws § 750.411h, McMahan herself did not experience the requisite distress. (R. 1, PID 16–17.)

In reaching its decision to deny Olrich's motion for peremptory relief, the Michigan Supreme Court could have found as follows (recall, under *Harrington*, this Court must hypothesize reasons for the state court's one-line decision):

Olrich asks us to peremptorily reverse the finding that he violated his probation by violating Michigan Compiled Laws § 750.411h.

Section 750.411h prohibits "a willful course of conduct involving repeated or continuing *harassment* of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested *and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested*." Mich. Comp. Laws § 750.411h(d) (emphases added); *see also Hayford v. Hayford*, 760 N.W.2d 503, 509 (Mich. Ct. App. 2008) (explaining that statute does not demand fear). "Harassment" includes, but is not limited to, "repeated or continuing unconsented contact that would cause a reasonable individual to suffer emotional distress and that *actually causes the victim to suffer emotional distress*." Mich. Comp. Laws § 750.411h(c) (emphasis added). In turn, "emotional distress" means, "significant mental suffering or distress that may, but does not necessarily, require medical or other professional treatment or counseling." Mich. Comp. Laws § 750.411h(b).

Olrich argues that while the evidence introduced during his probation violation hearing may have been sufficient to establish that a reasonable victim would have the requisite states of mind ("significant mental suffering or distress" and "fe[lt] . . . harassed[] or molested"), the evidence was not sufficient to show that McMahan herself had those states of mind.

The legal standard governing Olrich's insufficient-evidence claim is either the one set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979) or, perhaps, the one used in *Douglas v. Buder*, 412 U.S. 430 (1973), a case involving probation. *See Newmones v. Sec'y, Fla. Dep't of Corr.*, 546 F. App'x 812, 816 (11th Cir. 2013). Under *Jackson*, we would ask this question: taking the evidence in the light most favorable to upholding the probation violation, could *any* rational judge have found, more likely than not, that McMahan personally "suffered emotional distress" and "fe[lt] terrorized, frightened, intimidated, threatened, harassed, or molested"? Under *Douglas*, we would ask this one: Was the state trial court's finding that McMahan personally "suffered emotional distress" and "fe[lt] terrorized, frightened, intimidated, threatened, harassed, or molested" not "totally devoid of evidentiary support"?

In our view, the answer to either question is "yes." While Olrich and McMahan were friends for a number of years, sometime around April 2013, McMahan stopped visiting Olrich at the jail and asked him not to contact her anymore. And while McMahan did order Olrich items from the prison commissary after that, those orders do not negate her no-contact request. Yet after McMahan's no-contact request, and after Olrich was placed on probation in June 2013, he called McMahan *60 times*. McMahan explained, "My phone would ring and ring and ring and my whole family would listen to it ring off the hook because I refused to answer. I may very well not have been home some of those times as well, but I was not answering." McMahan also said, "I was just very aggravated that he

11

continued to call." Ultimately, McMahan sought a PPO. And while Olrich is correct that she obtained the PPO to prevent an in-person meeting, McMahan also stated, "I was tired of the calls." Finally, we stress that the standard of proof—a preponderance of the evidence—was not high.

We thus find that taking all the evidence in the light most favorable to upholding the violation, there is at least one reasonable judge that would find, more likely than not, that McMahan actually felt "harassed" or "significant mental suffering or distress" , *see Jackson*, 443 U.S. at 319, and we hold that the state trial court's finding about McMahan's state of mind was not "totally devoid of evidentiary support," *Douglas*, 412 U.S. at 432.

Had the Michigan Supreme Court provided that explanation for denying Olrich's motion for peremptory relief, this Court could not say that the Michigan Supreme Court's decision was contrary to or involved an unreasonable application of the holdings of the U.S. Supreme Court. As such, assuming that the Michigan Supreme Court reached the merits of Olrich's insufficient-evidence claim, this Court is barred from granting Olrich relief on that claim under § 2254(d).

**III.**

In sum, whether via procedure or merits, the analysis ends in the same place: Olrich's petition for habeas corpus must be and is DENIED.

The Court believes that reasonable jurists could debate this Court's finding that Olrich's insufficient-evidence claim is unexhausted and cannot now be exhausted. And if the claim is unexhausted and can still be exhausted, it may be best for Olrich to properly present the claim to the state courts so that they can adjudicate the claim in the first instance. *See Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015); *Lyons v. Stovall*, 188 F.3d 327, 331–32 (6th Cir. 1999). So the Court will GRANT Olrich a certificate of appealability on the issue of exhaustion and procedural default. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court otherwise denies Olrich a

certificate of appealability.

    SO ORDERED.

                                            s/Laurie J. Michelson  
                                            LAURIE J. MICHELSON  
Dated: April 23, 2018                 U.S. DISTRICT JUDGE

## **CERTIFICATE OF SERVICE**

    The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 23, 2018.

                                              s/Keisha Jackson  
                                              Case Manager